IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANTHONY PARKER,

           Petitioner,

vs.                                   **Case No. 03-3262-RDR**

CHARLES SIMMONS, et al.,

           Respondents.

## MEMORANDUM AND ORDER

Petitioner is incarcerated upon a state court conviction. This case is now before the court upon petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner proceeds <u>pro se</u>.

I.   <u>Habeas standards</u>

A writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, "was based on an unreasonable determination of the facts in light of the evidence presented at trial." 28 U.S.C. § 2254(d)(1)&(2). State court factual findings, including credibility findings, are presumed correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); see also <u>Smith v. Gibson</u>, 197 F.3d 454, 459 (10th Cir. 1999) <u>cert. denied</u>, 531 U.S. 839 (2000); <u>Baldwin v. Johnson</u>, 152 F.3d 1304, 1317 (11th Cir. 1998) <u>cert. denied</u>,

526 U.S. 1047 (1999); Nguyen v. Reynolds, 131 F.3d 1340, 1359 (10th Cir. 1997) cert. denied, 525 U.S. 852 (1998).

The Supreme Court has stated that a state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in our cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

The law limits the authority of the court to hold an evidentiary hearing upon petitioner's application for relief:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that - - (A) the claim relies on - - (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

II. <u>Case history</u>

In January 1997, petitioner was charged with one count of aggravated kidnaping, two counts of kidnaping, one count of aggravated robbery and one count of aggravated burglary in the state district court for Saline County, Kansas. Petitioner's first appointed counsel was permitted to withdraw after petitioner filed suit against him. A second attorney was also permitted to withdraw. Petitioner represented himself the first time a trial was attempted in this case in July 1997. During that trial, petitioner handed the trial judge a copy of a pleading which indicated that he was suing the trial judge in federal court. The trial judge declared a mistrial and recused himself from the case. A third attorney was appointed to represent petitioner and a different judge was assigned to the case. The third attorney filed a motion to withdraw the day before the second trial of the case started. The record of the trial indicates that there had been loud disagreements between petitioner and his third attorney prior to the second trial. Nevertheless, the trial proceeded with petitioner being represented by the third attorney. A jury convicted petitioner of all five counts. During the pretrial phases of the case, petitioner and petitioner's counsel filed motions raising a


speedy trial objection.

Following his conviction, petitioner brought a direct appeal to the Kansas Court of Appeals. On direct appeal, petitioner argued that: 1) the trial court improperly declared a mistrial and therefore defendant was placed in double jeopardy; 2) petitioner was improperly forced to wear prison clothes at trial; 3) petitioner had an irreconcilable conflict with his trial counsel at the second trial which the court did not properly examine; and 4) there was insufficient evidence to support the convictions for kidnaping and aggravated kidnaping. The Kansas Court of Appeals rejected these arguments and affirmed petitioner's convictions on December 23, 1999. Petitioner did not ask for review by the Kansas Supreme Court.

Petitioner filed a _pro se_ petition for relief under the state habeas statute, K.S.A. 60-1507. This petition made the following claims: 1) petitioner was denied the right to a speedy trial under the Sixth Amendment of the United States Constitution; 2) petitioner was denied his right to effective assistance of counsel because of the conflict he had with his counsel; 3) his trial counsel was ineffective for failing to file a motion to suppress; 4) petitioner was not permitted to be present during critical stages of his court proceedings; 5) trial counsel was ineffective for waiving petitioner's right to

a presentence investigation; and 6) petitioner was denied the effective assistance of counsel on appeal. The trial court denied this petition and this action was affirmed by the Kansas Court of Appeals in an opinion dated October 11, 2002. Petitioner asked for review by the Kansas Supreme Court of the following issues: 1) ineffective assistance of trial counsel due to the conflict with petitioner; 2) denial of a speedy trial; and 3) denial of effective assistance of counsel because of judicial misconduct. Review was denied by the Kansas Supreme Court.

### III.  Petitioner's arguments

Petitioner makes three arguments in the instant matter. He claims that his constitutional right to a speedy trial was violated. He claims that his constitutional right against double jeopardy was violated. Finally, he claims that his right to effective assistance of counsel at trial was violated. He elaborates upon these claims in a 140-page memorandum.

### A.  Speedy trial

Petitioner did not exhaust his state court remedies with regard to this issue. "A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000). See also, O'Sullivan v. Boerckel, 526 U.S.

838, 842-45 (1999) (when prisoner alleges state conviction violates federal law, state court must have full opportunity to review claim prior to prisoner seeking federal relief).  The exhaustion of state remedies requires properly presenting the claims in the highest court on direct appeal or in a post-conviction attack.  O'Sullivan, 526 U.S. at 842; Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994). Ineffective assistance of counsel may be asserted to excuse a failure to exhaust state remedies, but this claim itself must be exhausted at the state level.  See Edwards v. Carpenter, 529 U.S. 446, 453 (2000); Murray v. Carrier, 477 U.S. 478, 489 (1986).

Petitioner did not raise the speedy trial issue on direct appeal to the Kansas Court of Appeals or the Kansas Supreme Court.  The issue was considered procedurally barred by the Kansas Court of Appeals on review of the petition filed pursuant to K.S.A. 60-1507, although the court also stated that the issue had no merit.  Therefore, petitioner did not exhaust his state court remedies on this issue.

We also agree with the Kansas Court of Appeals, however, that petitioner has no meritorious constitutional claim for a violation of his speedy trial rights.  The Sixth Amendment right to a speedy trial attaches at the time of arrest.  Doggett v.

United States, 505 U.S. 647, 655 (1992); U.S. v. Wallace, 326 F.3d 881, 885 (7th Cir. 2003). In evaluating whether the delay of a trial has violated the Constitution, a court must consider the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial rights, and the prejudice to defendant due to the delay. Barker v. Wingo, 407 U.S. 514, 530 (1972). However, the length of delay is given first consideration, and only when the length of delay is presumptively prejudicial should the court consider the remaining factors. Id. In this case, petitioner was arrested on January 19, 1997. His first trial started on or about July 9, 1997. The second trial started on or about September 9, 1997. This delay of less than six months between his arrest and the first trial and less than eight months between arrest and the second trial is not presumptively prejudicial. U.S. v. McFarland, 116 F.3d 316, 318 (8th Cir.) cert. denied, 522 U.S. 961 (1997) (lapse of a little over seven months); U.S. v. Lugo, 170 F.3d 996, 1002 (10th Cir. 1999) (delay of approximately seven months); U.S. v. Dirden, 38 F.3d 1131, 1138 (10th Cir. 1994) (delay of seven and one-half months); U.S. v. Kalady, 941 F.2d 1090, 1095-96 (10th Cir. 1990) (delay of eight months between indictment and guilty plea).

    B.  Double jeopardy

Although petitioner raised his double jeopardy claim in his direct appeal to the Kansas Court of Appeals, he did not ask for review of the Kansas Court of Appeals decision by the Kansas Supreme Court.  The issue was not raised in petitioner's application for habeas relief under K.S.A. 60-1507, although petitioner did claim that his appellate counsel was ineffective for failing to file a petition for review of the denial of his direct appeal with the Kansas Supreme Court.  In petitioner's appeal of his state habeas petition to the Kansas Court of Appeals, the issue was not raised by petitioner's counsel or by petitioner in a pro se supplemental brief.  Petitioner also excluded the issue from his petition for review by the Kansas Supreme Court of the denial of his state habeas action. Petitioner mentions ineffective assistance of counsel in the instant § 2254 petition, but he does not raise this issue in relation to the failure to appeal the double jeopardy issue to the Kansas Supreme Court.  As already mentioned, petitioner did not bring that question before the Kansas appellate courts on his state habeas petition.  On the basis of the authorities already cited, these circumstances constitute procedural default and, therefore, petitioner is not entitled to federal habeas review of the double jeopardy issue.

    C.   Conflict with counsel

The day before the second trial started, defendant's appointed counsel filed a motion to withdraw, stating:

> [M]ovant shows the Court the defendant and counsel have severe disagreements as to the proposed theme of the trial herein.  Further, said disagreements have prevented counsel from gaining any insight from the defendant as to the defendant's wishes.

Exhibit B, Petitioner's memorandum.  This motion was denied apparently.  The opening day of the second trial, petitioner referred to the motion to withdraw and the court indicated that counsel would not be permitted to withdraw. Petitioner and the trial judge then made the following statements:

> [Petitioner]:  Okay.  If counsel and defendant has a severe disagreement, a bad understanding, had a cussing match so bad all of the deputies rushed to the occasion on Saturday, how is it even possible for defendant to have a fair and impartial trial when counsel do not have no understanding with the defendant?
>
> THE COURT:  We're having a trial today, Mr. Parker. I'm just telling you we are not having a dialogue.
>
> [Petitioner]:   It seems to me conflict of interest with counsel and defendant. How could defendant think he [is] going to have a fair trial?
>
> THE COURT:  Raise it on appeal, Mr. Parker.  We're having a trial today.  Again, Mr. Parker, again, admonishment by the Court.  You have an attorney.  The Court expects everything to go through your attorney. Otherwise, the Court will take steps and means whereby it finally, if necessary, has to remove you from the courtroom and proceed with trial from that moment in time.

(Tr. Vol. IV, p. 10-11).

When the trial was approximately two-thirds finished, petitioner's counsel told the court that petitioner had some issues that petitioner wanted to direct to the court without going through counsel. The trial judge informed petitioner and his counsel that petitioner should raise any issues through his counsel. Given that directive, petitioner told the court that he wished to dismiss his counsel. The trial judge considered that remark as a motion to dismiss defense counsel and told petitioner that his counsel would continue to represent him. Petitioner repeated his desire to have his counsel withdraw and then stated:

> Unless me and him can have a conference and come to an agreement because we have no agreement on this matter and it needs to be some kind of way me and him can go in private and discuss these matters.

(Tr. Vol. 5 at p. 200).

The trial judge then gave petitioner and his counsel additional time to discuss matters in private. After this meeting, nothing further was stated by petitioner or his counsel regarding a conflict between them. The trial reconvened with additional witness testimony and proceeded to its conclusion without any further objection from petitioner regarding his counsel.

The law regarding conflicts between counsel and criminal defendants has been summarized by the Tenth Circuit as follows:

> "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987) (internal quotation marks omitted). Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney, . . . rather, there must be a total breakdown in communications. United States v. Doe # 1, 272 F.3d 116, 124 (2d Cir. 2001).
>   If a defendant makes sufficiently specific, factually based allegations in support of his request for new counsel, the district court must conduct a hearing into his complaint . . .
>   Hearings typically are crucial for what they add to a district court's knowledge in this context. They help a court determine whether an attorney-client conflict rises to the level of a "total breakdown in communication" or instead whether the conflict is insubstantial or a mere "disagreement about trial strategy [that] does not require substitution of counsel." United States v. Taylor, 128 F.3d 1105, 1110 (7th Cir. 1997). The types of communication breakdowns that constitute "total breakdowns" defy easy definition, and to our knowledge no court or commentator has put forth a precise definition. As a general matter, however, we believe that to prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.
> . . . .
>   [In Romero v. Furlong, 215 F.3d 1107 (10th Cir. 2000], we considered four factors when examining the constitutional implications of a total breakdown in communication:  1) whether the defendant's motion for new counsel was timely; 2) whether the trial court adequately inquired into defendant's reasons for making the motion; 3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and 4) whether the defendant substantially and unreasonably contributed to the communication breakdown.

U.S. v. Lott, 310 F.3d 1231, 1249-50 (10th Cir. 2002) cert. denied, 538 U.S. 936 (2003) (some interior citations omitted).

Petitioner has had a history of conflict with his counsel in this case.  According to the Kansas Court of Appeals:

> The first attorney withdrew after defendant sued the attorney in federal court.  The second attorney was allowed to withdraw after advising the court that defendant wished to represent himself and refused to allow counsel to work on his behalf.

Exhibit G, Petitioner's memorandum, State of Kansas v. Anthony J. Parker, No. 80,651 (Kan.App., unpublished, 12/23/1999) at p. 10.  Defendant was representing himself when the first trial ended as a mistrial.

Addressing the attorney conflict issue in light of the four factors mentioned by the Tenth Circuit, we do not believe a constitutional question of ineffective assistance of counsel is presented.  The motions for withdrawal or dismissal of counsel were not very timely.  One was presented the day before trial; the other was presented on the second day of trial.  Neither was presented at a time when different counsel could have been appointed without altering the trial schedule of the court and causing inconvenience to others involved in the case.  From the transcripts available to the court, the trial court did not make an in-depth inquiry of the reasons for permitting counsel to withdraw.  But, it is apparent that the problems expressed by

petitioner related more to his desire for "hybrid representation" (that is, a mixture of self-representation and representation by counsel) than a breakdown in communication. The trial court's inquiry led it to grant petitioner additional time to consult with counsel and this appeared to end the difficulties petitioner had with his trial representation. Petitioner was not entitled to hybrid representation. <u>U.S. v. McKinley</u>, 58 F.3d 1475, 1480 (10th Cir. 1995); <u>U.S. v. Treff</u>, 924 F.2d 975, 979 n.6 (10th Cir.) <u>cert. denied</u>, 500 U.S. 958 (1991). Thus, the trial court's inquiry into petitioner's alleged problems with his trial counsel, while not detailed, was not inadequate.

The "conflict" which existed between petitioner and his counsel during the second trial was not so great as to lead to a total lack of communication.  There is evidence that the communication may have been loud and angry at times.  There is evidence that petitioner and his counsel were given extra time to communicate with each other.  But, there is no evidence that there was a lack of communication which led to ineffective assistance of counsel.  Petitioner's trial counsel was active throughout the case and presented petitioner's direct testimony. The record does not support a finding that there was a complete breakdown of communication or an irreconcilable conflict.

13

Finally, it appears to the court that petitioner contributed to whatever conflict existed between himself and counsel. Petitioner had conflicts with his previous counsel and represented himself during the first trial. Petitioner also chose to sue the first trial judge when he disagreed with rulings in the case. He sued his first appointed attorney when he disagreed with strategies for the defense.

In summary, on the basis of a review of all the factors this court should consider in determining whether a total breakdown in communication led to a violation of petitioner's right to the effective assistance of counsel, we conclude that the conflict which existed was not so complete and not so serious that it violated petitioner's constitutional rights or caused an unfair trial.

IV. <u>Conclusion</u>

In conclusion, for the above-stated reasons, the court shall deny the petition for relief under 28 U.S.C. § 2254.

**IT IS SO ORDERED**.

Dated this 25th day of February, 2005 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge